ISHEE, J., for the Court:
¶ 1. This case arises from a land dispute in Claiborne County, Mississippi, involving three parties: Robert Philip Segrest, Dennis Wayne Starnes, and Timothy Austin Starnes (the Starnes brothers). In 2009, Segrest filed a complaint against the Starnes brothers in the Claiborne County Chancery Court, claiming title to certain land and adverse possession. In response, the Starnes brothers filed an answer and counter-complaint alleging ownership of the land. After a trial on the merits, the chancery court found that the Starnes brothers owned the disputed land and dismissed Segrest’s claim. Aggrieved, Seg-rest appeals. Finding no error, we affirm.
*630 STATEMENT OF FACTS
¶ 2. In 2006, Wayne Starnes hired Grady Anderson, a local surveyor, to partition land among his five sons, including Dennis and Timothy. Dennis and Timothy were each given 116 acres, which included portions of the land in controversy in this case. Upon partition, a discrepancy arose between Segrest and the Starnes brothers as to the ownership of the disputed land. The land in question consists of 75.94 acres located in the southeast quadrant of Section 19, east of Brandywine Creek (also known as “Little Bayou Pierre”), and the south half of Section 20.
¶ 3. On November 2, 2009, Segrest filed a complaint alleging ownership of 18 acres in Section 19 and the total acreage of Section 20. Segrest claimed that his title to the property dated back more than sixty years. Segrest declared that, on April 25, 1975, he received fee-simple title to the disputed land by partition deed from Oren P. Segrest. A plat of the Segrest property, created by R.D. Wade Jr., was attached to the deed. Segrest also claimed title to the disputed land by adverse possession.
¶ 4. The Starnes brothers counterclaimed alleging ownership of the entire 75.94 acres. They declared that their title to the property also dated back more than sixty years. The Starnes brothers claimed to be record title holders to this property through deeds gifted to them by their father on December 29, 2006. The Starnes brothers claimed, based on the survey made by Anderson and the concept of bounding, that the description of the property in their deeds included the entire 75.94 acres.
¶5. A trial was held over four days. Segrest claimed title to 20 acres of the disputed land in the southern portion of Section 19. He admitted that he did not have a deed that conveyed this portion of the land. Rather, he relied on a description in a deed from the Starnes family’s chain of title that excluded 20 acres previously conveyed to D.T. Segrest. While Segrest originally claimed title to all of the disputed land in the southern portion of Section 20, he only claimed title to 16.44 acres at trial. He contended that title to this property dates back to a deed from 1854 in his chain of title, in which the description provided: “Fractional Section 20, Township 10 North, Range 5 East containing seventy-nine acres.... ”
¶ 6. The Starnes brothers testified that Segrest did not have any claim of title to the disputed land. While Segrest maintained that these past deeds were ample proof, the Starnes brothers contended that the 1975 deed from Oren to Segrest failed to include any of the disputed land, as evidenced by the plat of Segrest’s property created by Wade. Further, the Starnes brothers argued that Oren acknowledged and honored the boundary lines as provided in that plat.
¶ 7. Segrest countered that this was an error and that it was later corrected by a quitclaim deed between himself and his family in August 2011, which included the disputed land in Section 19 and Section 20. The Starnes brothers maintained that they held legal title to the land dating back to a deed from 1897, which provided: “In aid of description ... 30 acres, more or less, are in the southeast corner of Section 19[,] and 10 acres, more or less, are off the south end of Section 20 in said Claiborne County....” This deed also provided a bounding description for the disputed property.
¶ 8. Segrest asserted that his family had used the property since 1853. Segrest testified that an ancient fence cut through the disputed property of both Section 19 and Section 20. Testimony was presented that Segrest had hunted, cut timber, and paid taxes on the land. He admitted, however, that he had not used any of the *631 property south of the fence. The evidence shows that, for several years, Segrest paid property taxes on 2.2 acres in Section 19 and 30.50 acres in Section 20. Segrest also testified that he was familiar with the property, as he had visited it with his family throughout his life.
¶ 9. The Starnes brothers testified that their family had used the land as their own since the 1940s. They contended that they had hunted, farmed, and maintained the land since that time. They argued that the ancient fence referenced by Segrest was actually a fence put in place by their predecessors in title to keep cattle from straying. The evidence shows that, for several years, Dennis paid property taxes on all the acres in Section 19 and 25.3 acres in Section 20. The Starnes brothers stated that they were very familiar with the property, including references to the general topography, as well as specific landmarks.
¶ 10. On the last day of trial, the chancellor viewed the premises. After considering the pleadings, the testimony of witnesses, the evidence presented, and the land itself, the chancellor found that Seg-rest did not own the land by record title and he had failed to prove his claim of adverse possession. The chancellor concluded that the Starnes brothers held ownership, and even if they did not hold record title, they had adversely possessed the disputed land. Aggrieved, Segrest appeals.
DISCUSSION
¶ 11. A limited standard of review is applied to appeals from chancery court. Rodgers v. Moore, 101 So.3d 189, 193 (¶ 8) (Miss.Ct.App.2012) (citations omitted). This Court “will not disturb .the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, [was] clearly erroneous, or applied an erroneous legal standard.” Jones v. Graphia, 95 So.3d 751, 753 (¶ 6) (Miss.Ct.App.2012) (citations omitted). Questions of law are reviewed de novo. Id.
¶ 12. Segrest alleges, and lists, numerous grievances he claims were made by the chancellor in the case. He contends that the chancellor erred in making his factual findings and applied erroneous legal standards. However, the center of Segrest’s argument is that he holds title to, or has adversely possessed, the disputed land. Segrest asserts that the chancellor erred in ruling that the Starnes brothers owned the land in question, by either title or adverse possession. Therefore, he maintains that the chancellor erred in dismissing his claim of title and his adverse-possession claim. We disagree.
I. Claim of Title
¶ 13. On appeal, Segrest asserts a claim of title to 11.85 acres in the southeast quadrant of Section 19, all east and north of the ancient fence and east of Brandywine Creek. At trial, however, Segrest admitted under oath that he did not have a deed that directly stated that he owned the land. Rather, he argued that his title derives from the recorded deed of C.C. Goza to T.L. Rush in the Starnes brothers’ chain of title, dated December 7, 1896, which provides: “All the East half of Section 19, T.10, R.5 E, less 20 acres hereafter conveyed to D.T. Segrest, containing 300 acres more or less.... ”
¶ 14. Segrest also maintains a claim of title to 16.44 acres in the south half of Section 20, north of the ancient fence and north of the Starnes brothers’ ten acres in the south end thereof. The deed from which he claims this title vests is the deed he received from Oren in 1975, which included a plat created by Wade. This deed, however, did not include the disputed area *632 to which Segrest claims ownership. At trial, Segrest testified that while he did not realize it at the time, the disputed land had been excluded. He maintained that this error was corrected in a quitclaim deed between him and his family, dated August 16, 2011.
¶ 15. Segrest argues that he holds record title to the disputed land in both Section 19 and Section 20. We disagree. Based on the testimony and exhibits presented at trial, Segrest failed to establish that he held record title to the disputed area. Further, the deeds presented by the Starnes brothers to the chancery court included a specific amount of acreage as well as a bounding description. It is well settled that, “[g]enerally, ‘the canons of construction for deeds make specific boundaries control over acreage and fractions of property.’ ” Harrison v. Roberts, 989 So.2d 930, 932 (¶13) (Miss.Ct.App.2008) (citation omitted). As such, we find that the Starnes brothers hold record title to the disputed land.
II. Adverse Possession
¶ 16. Mississippi Code Annotated section 15-1-13(1) (Rev.2012) defines adverse possession as follows:
Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
In order to prevail on a claim of adverse possession, one must establish the following six elements: “[ (1) ] the property must be ... under claim of ownership; [and the possession must be] (2) actual or hostile;. (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Massey v. Lambert, 84 So.3d 846, 848 (¶ 7) (Miss.Ct.App.2012) (citing Cook v. Robinson, 924 So.2d 592, 595 (¶ 11) (Miss.Ct.App.2006)). The claimant has the burden of proving adverse possession by clear and convincing evidence. Id.
A. Claim of Ownership
¶ 17. There is little evidence that Seg-rest occupied the disputed area under a claim of ownership. Segrest could not provide a deed that supported his claims. In contrast, the Starnes brothers’ deed was specific as to the amount of acreage as well as included a bounding description. Further, the evidence shows that the Starnes brothers, not Segrest, paid taxes for the majority of Section 19 and Section 20. We find Segrest failed to establish a claim of ownership to the disputed area by clear and convincing evidence.
B. Actual or Hostile
¶ 18. Evidence was provided to the chancery court that the Starnes brothers had used the property since the 1940s. Maps of the area from the Claiborne County Tax Assessor’s Office showed that the Starnes brothers owned the disputed land. Further, the chancellor heavily weighed the testimony describing the land as well as his personal view of the property.
¶ 19. The evidence reflects that Segrest was not familiar with obvious landmarks and the basic topography of the area. Segrest placed much emphasis on the ancient fence that divided the disputed area, but was unable to state who built or maintained it. He contended that there were roads and trails throughout the area, but the chancery court concluded that none existed. Ultimately, Segrest lacked the *633 detailed knowledge of the land that the Starnes brothers had presented at trial.
C. Open, Notorious, and Visible
¶ 20. Segrest argues that he had performed at least five timber cuts in the area in the last sixty-four years without any challenge by the Starnes brothers. However, the chancery court concluded that the only evidence of a timber cut by Seg-rest was in 2003. Further, there was testimony that the Starnes brothers had also performed timber cuts, as well as farmed, hunted, and maintained the property.
D. Continuous and Uninterrupted for a Period of Ten Years
¶ 21. Testimony at trial provided that the Starnes brothers had used the property since 1944. Although Segrest argues that he and his family had used the land for more than one hundred years, the record reflects that this was “sporadic at best.”
E. Exclusive
¶ 22. The chancery court concluded that the Starnes brothers had exclusive use of the property until the 2003 timber cut made by Segrest. Although this act by Segrest interrupted the exclusivity of the Starnes brothers, this was only six years prior to the filing of this suit and did not meet the time element necessary to prove adverse possession.
F. Peaceful
¶ 23. There was no evidence of any disputes among the parties until this suit was filed in 2006.
¶ 24. “In a bench trial, the chancellor is the finder of fact and, thus, solely determines the credibility of witnesses and the weight to give to the evidence.” Webb v. Drewrey, 4 So.3d 1078,1081 (¶ 11) (Miss.Ct.App.2009) (citation omitted). “This Court gives great deference to a chancellor’s findings of fact.” Id. We find that there is substantial evidence in the record that supports the chancellor’s findings. We conclude that the chancellor correctly determined that record title was vested in the Starnes brothers and Segrest did not succeed on his claim of adverse possession. As such, the issue raised by Segrest that the chancellor erred in finding that the Starnes brothers also adversely possessed the land if they did not hold record title is moot. Accordingly, this issue is without merit. We affirm the judgment of the chancery court.
¶ 25. THE JUDGMENT OF THE CLAIBORNE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.